IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**BRITTANY BYRD**                                                                                                    **PLAINTIFF**

v.                                    **CASE NO. 4:22-CV-01208-BSM**

**CHIEF WILLIAM TAPLEY; ASSISTANT
CHIEF CHRIS HARRIS; MAJOR CLAYTON
SMITH; LT. ANDREW BURNINGHAM;
MAYOR BART CASTLEBERRY; MAJOR
MIKE WELSH, In Their Individual and Official
Capacities; and THE CITY OF CONWAY**                                              **DEFENDANTS**

## ORDER

Defendants' motion for summary judgment [Doc. No. 133] is denied on plaintiff's failure to promote sex discrimination, Fair Labor Standards Act, Arkansas Minimum Wage Act, and Arkansas Whistle-Blower Act claims. The motion is granted on all other claims and those claims are dismissed with prejudice.

### I. BACKGROUND

The undisputed facts as set forth in plaintiff's response to defendants' statement of undisputed material facts (SUMF), Doc. No. 150, are as follows.

Brittany Byrd began working for the Conway Police Department in April of 2015 as a patrol officer. SUMF ¶¶ 1, 4. Three years later, she was selected to be a K9 officer. *Id.* ¶ 14. There were three other K9 officers at the time: Matthew Edgmon, Rick Shumate, and Dan Mullaney. *Id.* ¶ 19. When Edgmon was promoted to sergeant, Tanner Williams replaced him as K9 officer. *Id.* ¶¶ 55, 91. William Tapley became the chief of the Conway Police Department in July 2020. *Id.* ¶ 80.

A.     Tarheel Training Inquiry

Major Clayton Smith engaged Sean Siggins to conduct a decoy certification camp for the Conway Police Department and for a private club with which Smith is associated. *Id.* ¶¶ 38, 59. In June 2019, Byrd told then Chief of Police Jody Spradlin and Major Laura Taylor that she was not comfortable participating in the decoy training because it was closely related to Smith's personal dog business. *Id.* ¶ 48. After this meeting, Byrd felt that Smith began to treat her unfairly. *Id.* ¶¶ 51, 61–62. Later that year, Byrd told Spradlin and Taylor that she was having difficulty getting approval for equipment for her K9 because Smith was using the funds to pay for his friend, Siggins, to provide decoy training. *Id.* ¶ 63.

B.     On-Call Schedule

When Edgmon was promoted to K9 supervisor, he changed the on-call schedule to a weekly rotation. *Id.* ¶¶ 91, 93. Before the January 2022 change, Byrd and Williams worked twelve-hour patrol shifts and were the only officers who participated in on-call shifts. *Id.* ¶ 95. Because they were the only on-call K9 officers, if Byrd took time off, Williams would have to cover her. *Id.* ¶ 94.

When called out, on-call officers must put on their uniforms and gear, put on their K9s' gear, load their K9s into their cars, and allow their K9s to take breaks. *Id.* ¶ 261. The officer's response time is twenty to thirty minutes. *Id.* ¶¶ 263, 265. The typical on-call shift was four to twelve hours but Byrd was occasionally on-call 24 hours. *Id.* ¶ 272. While on call, Byrd was not required to be at the station, was not required to listen to the monitor, and was able to do things near her home. *Id.* ¶¶ 267–69.

Shumate was removed from the on-call rotation. *Id.* ¶ 97. K9 officers were directed to report to Lieutenant Andrew Burningham and Byrd notified Burningham that she was concerned about the on-call rotation. *Id.* ¶ 101; Addendum, Ex. 1, Byrd Dep. I. 114:12–24. In August 2022, Burningham notified the K9 unit that everyone was being placed back on a four-week rotation, and Byrd thought this was fair. SUMF ¶¶ 127–28. In March 2023, the K9 on-call rotations ended and K9 officers no longer had on-call shifts. *Id.* ¶ 177.

    C.    <u>Bite Suits</u>

K9 officers use bite suits for protection when conducting apprehension training. *Id.* ¶ 226. When Byrd first joined the K9 unit, the department only had one bite suit and it was fitted for a larger man. *Id.* ¶ 228. When Byrd wore the bite suit, it would bunch up around her joints. *Id.* ¶ 229. In June 2021, Sergeant Danny Worley ordered two new bite suits that were intended to be better fitting. *Id.* ¶ 84. The new suits were still too large for Byrd. *Id.* ¶¶ 85, 230. Byrd never complained to Burningham, Smith, or Edgmon about the bite suits. *Id.* ¶¶ 232–234. Two additional bite suits, including one that properly fit Byrd, were ordered in late 2023 and those suits were received in January 2024. *Id.* ¶ 224.

    D.    <u>2023 Sergeant Promotion</u>

In May 2023, police chief Tapley began the process of hiring a new sergeant, and the department conducted a sergeant promotion test. *Id.* ¶ 185. When the unofficial test results were scored, Kelton Smith and Byrd were ranked one and two respectively, and Michael Jones, Matthew Holland, James Burroughs, and Steven Spurgers tied for third place. *Id.* ¶¶ 186–87. The candidates were then interviewed by Tapley and four lieutenants. *Id.* ¶¶

3

189–90. One of the interviewers was Ryan Britton, who was candidate Burroughs's supervisor in the SWAT unit. Addendum, Doc. No. 149, Ex. 95, Dep. William Tapley 141:6–20. Although Burroughs tied for third on the test, he was promoted. *Id.* ¶ 191.

Byrd, who ranked second on the test, attempted to appeal the decision but was told that there was no appeal process in place. *Id.* ¶ 192. Tapley told Byrd that the decision to promote Burroughs was final and that Byrd's claims of retaliation, favoritism, and discrimination were baseless. *Id.* ¶ 193. Byrd filed a grievance claiming that Tapley's hiring decision violated department policy because it was based on his personal relationships with, and preference for, other candidates. *Id.* ¶ 194. She also wrote that the decision was discriminatory and retaliatory and that Tapley failed to provide a reason for his decision other than his belief that Burroughs was the most qualified despite the fact that she scored higher on the exam and had more qualifications. *Id.*

    E.    <u>Byrd Disciplinary</u>

Major Mike Welsh was assigned as the K9 supervisor in March 2023. *Id.* ¶ 183. When Byrd's K9, Leo, was diagnosed with heart worms in July 2023, Welsh told Byrd to keep Leo out of her vehicle while he received treatment. *Id.* ¶¶ 195, 197. Welsh also told Byrd to drive a regular patrol vehicle until Leo returned to duty. Byrd Dep., Vol. I, 258:24–25.

In August 2023, Byrd attempted to leave Leo at the department's kennel during her shift, but could not find the key to the lock on the outside kennel door. SUMF ¶ 204. It was a hot day, and Leo was not supposed to be in the heat while on his heart worm medication.

*Id.* Byrd, therefore, conducted her patrol with Leo in her K9 vehicle. *Id.* ¶¶ 204–05. Welsh wrote Byrd a disciplinary for failing to follow his orders. *Id.* ¶¶ 207, 210. Byrd filed a grievance about the disciplinary; however, Tapley upheld it. *Id.* ¶¶ 211, 213.

Byrd is suing the City of Conway, and William Tapley, Chris Harris, Clayton Smith, Andrew Burningham, Bart Castleberry, Mike Welsh in their individual and official capacities under 42 U.S.C. section 1983, the Family Medical Leave Act, the Fair Labor Standards Act, the Rehabilitation Act, the Arkansas Minimum Wage Act, the Arkansas Civil Rights Act, and the Arkansas Whistle Blower Act. Defendants are moving for summary judgment on all claims.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in her pleadings. *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring a trial. *Id.* All reasonable inferences must be drawn in a light most favorable to the non-moving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). The evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

III. DISCUSSION

Defendants' motion for summary judgment is granted in part and denied in part. Although confusing, it seems Byrd admits that the City of Conway is entitled to summary judgment on all claims under section 1983 and all claims under the ACRA except retaliation. *See* Resp. Defs.' Mot. Summ. J. ¶ 11, Doc. No. 147; *see also* Br. Supp. Pl.'s Resp. Defs.' Mot. Summ. J. (Byrd Br.) at 17–18, Doc. No. 148. Byrd also concedes that Castleberry, Harris, Smith, and Burningham are entitled to summary judgment on all of her retaliation claims. *See* Br. Supp. Pl.'s Resp. Defs.' Mot. Summ. J. at 12. Byrd has waived her Rehabilitation Act, Family Medical Leave Act, and Arkansas Civil Rights Act disability discrimination claims because she did not respond to defendants' summary judgment motion addressing those claims. *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009).

    A.    <u>Sex Discrimination</u>

Summary judgment is denied on Byrd's failure to promote sex discrimination claim and granted on her claim regarding the bite suit. Sex discrimination claims brought under section 1983 are analyzed similarly to those brought under Title VII. *Humphries v. Pulaski Cnty. Special Sch. Dist.*, 580 F.3d 688, 692 n.3 (8th Cir. 2009) (applying *McDonnell Douglas* burden shifting test). Unlike cases brought under Title VII, sex discrimination claims brought under section 1983 may be brought against individuals. 42 U.S.C. § 2000e(b); *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978).

Byrd does not have direct evidence of sex discrimination, so she is attempting to show

that discrimination can be inferred by defendants' actions. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Fiero v. CSG Sys., Inc.,* 759 F.3d 874, 878 (8th Cir 2014). This requires Byrd to establish a prima facie case of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802. If she does this, the burden shifts to defendants to provide legitimate non-discriminatory reasons for each of their decisions. *Id.* If defendants meet this burden, the burden shifts back to Byrd to show that the reasons provided by defendants are merely pretext for discrimination. *Id.* at 804. Discrimination claims arising under 42 U.S.C. section 1983 and the Arkansas Civil Rights Act are analyzed under the same standard. *DePriest v. Milligan*, 823 F.3d 1179, 1185 (8th Cir. 2016).

*1. Promotion*

Summary judgment is denied on Byrd's failure to promote claim because there are material issues of fact in dispute requiring the weighing of evidence.

Defendants concede that Byrd has established a prima facie case: (1) she is a member of a protected group; (2) she applied for a promotion to a position for which she was qualified; (3) she was not promoted; and (4) a male applicant was promoted. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1046 (8th Cir. 2011) (en banc); *see* Reply Supp. Defs.' Mot. Summ. J. 9–10, Doc. No. 153. In response, defendants argue that Burroughs was promoted because he was senior to Byrd, held a commission on law enforcement standards and training senior certificate, had patrol and narcotics experience, had military service, and served in leadership roles. SUMF ¶ 303.

Byrd argues that defendants' response is pretextual because (1) Burrough's

supervisor, Lieutenant Britton, assisted in conducting interviews; (2) the hiring process violated state law; (3) Chief Tapley has shown bias against females in the past; and (4) Byrd was more qualified than Burroughs. Byrd Br. 5–9. As to her first argument, simply having a supervisor of one candidate participate in the interviews does not infer sex discrimination. *See Torgerson*, 643 F.3d at 1049 (subjectivity in interviews does not give rise to an inference of discrimination where objective criteria is used as well). Byrd's second argument, that defendants violated Arkansas Code section 14-51-306 because the oral interviews were not fair and impartial as explained in *Bennett v. Blytheville Civil Service Commission*, 733 S.W.2d 414 (Ark. 1987), is misguided. *Bennett* merely holds that evaluations used by civil service commissions to certify candidates must be preserved so that they can be judicially reviewed to ensure that the examiners have not been entirely guided by their own subjective discretion. *Id.* at 416. The written test was the only metric the Conway Civil Service Commission used to certify candidates. SUMF ¶ 186.

Whether Chief Tapley is biased against women, and whether that bias influenced his decision to deny Byrd the promotion, are fact-intense questions. In support of her position, Byrd argues that he once ignored reports that Major Smith strangled his wife and he once implied that an allegation that a male officer made sexual remarks in front of a female officer was not serious enough to justify the use of a voice stress test. Byrd Resp. 6–7.

As to whether Tapley ignored Smith's strangulation of his wife, Tapley testified that an investigation was initiated once he was notified of the allegation. Tapley Dep. 17:6–23. Byrd's bald statement, taken alone, is not enough to create an issue of fact because it is self

serving and totally unsupported by anything else in the record. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (for an issue of fact to be genuine, the non-moving party must show more than "some metaphysical doubt as to the material facts"); *Viewpoint Neutrality Now! v. Bd. of Regents of Univ. of Minnesota*, 109 F.4th 1033 (8th Cir. 2024), *cert. denied sub nom.*, *Viewpoint Neutrality Now v. Bd. of Regents Univ. MN*, No. 24-655, 2025 WL 1151234 (U.S. Apr. 21, 2025) (a plaintiff may not merely rely on unsupported self-serving allegations, but must have sufficient probative evidence that would permit a finding in plainitff's favor; the purpose of summary judgment is to isolate and dispose of factually unsupported claims).

As to whether Tapley remarked that inappropriate sexual remarks were insufficient to warrant a stress test, it appears that Byrd's recollection does not comport with the actual facts. Rachel Kear, the female officer who reported the inappropriate sexual remark and requested the stress test, testified that Chris Harris, not Chief Tapley, stated that the inappropriate sexual remark was not serious enough to justify a voice stress test. Addendum, Doc. No. 149, Ex. 112, Dep. Rachel Kear 29:2–30:20.

Byrd's fourth argument, that she was more qualified than Burroughs, is not a cut-and-dry question. Byrd Br. at 8–9. Byrd scored higher on the exam and had more training hours than Burroughs. SUMF ¶ 187, Additional Facts Supp. Br., Doc. No. 149, Ex. CC, Byrd's Training Hours, Ex. DD, Burroughs's Training Hours. Burroughs, however, was employed by the department four years longer than Byrd and had high performance evaluations. SUMF ¶¶ 1, 296, Addendum, Ex. 104, Burroughs Personnel File at 14782, 14778, 14880, 14885,

14906, 14914, 14928, 14948, 14958, 14962, 14979, 14985, 14992, 14996, 15003, 15008. Burroughs also had a senior certification as a certified law enforcement officer whereas Byrd had a less advanced certification. *See* Additional Facts Supp. Br. Exs. CC, DD. This dispute is close enough to warrant consideration by a jury. Finally, Tapley is not immune because Byrd is asserting that Tapley violated her clearly established right to equal opportunity in employment. *Okruhlik v. Univ. of Ark. ex rel. May*, 255 F.3d 615, 626 (8th Cir. 2001) (the Fourteenth Amendment prohibits intentional discrimination on the basis of sex).

### 2. Ill-Fitted Bite Suit

Summary judgment is granted on Byrd's claim of discrimination based on the department's failure to provide her with a properly fitting bite suit. To create an inference of discrimination, Byrd must show that she (1) is a member of a protected class; (2) met the department's expectations; (3) suffered adverse employment action; and (4) the circumstances give rise to an inference of discrimination. *Young v. Builders Steel Co.*, 754 F.3d 573, 578 (8th Cir. 2014). Defendants concede that Byrd has met the first two elements. Reply Supp. Defs.' Mot. Summ. J. at 29. An adverse employment action is one that produces an employment disadvantage and Byrd argues that she suffered a disadvantage during K9 training due to the ill-fitted suit. *See Muldrow v. City of St. Louis, Mo.*, 601 U.S. 346, 359 (2024); Byrd Dep I 81:21–82:23. The problem for Byrd is that nothing in the record infers discrimination was at play because the record does not show that more favorable treatment was given to similarly-situated male employees. *See Young*, 754 F.3d at 578. Indeed, Byrd admits that the department attempted to procure her a properly fitted bite suit in June 2021

and in October 2023. SUMF ¶¶ 84, 216–17.

    B.    <u>Retaliation</u>

Summary judgment is granted on Byrd's retaliation claims against Tapley and Welsh because she has failed to show a causal connection between an adverse employment action and protected activity. *See Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013). To establish a prima facie case of retaliation, Byrd must show that (1) she engaged in protected activity; (2) she suffered a materially adverse employment action; and (3) there was a causal connection between elements one and two. *Id.* Byrd satisfies the first element because she engaged in protected activity when she spoke to Spradlin and Taylor in June 2019 about her concerns with Smith's potential misuse of public funds. *See Gagnon v. Sprint Corp.*, 284 F.3d 839, 854 n.4 (8th Cir. 2002), *abrogated on other grounds by, Desert Palace v. Costa*, 539 U.S. 90 (2003) (internal or informal complaints to superiors are protected under Title VII); SUMF ¶ 48. Byrd alleges she suffered adverse employment actions when she was passed over for the sergeant promotion by Tapley in June of 2023 and when she was issued a disciplinary by Welsh in August of 2023. The problem Byrd has is that there is nothing in the record showing a causal connection between her statements to Spradlin and Taylor and Tapley's decision to promote Burroughs over her or Welsh's decision to write her a disciplinary. Indeed, there is not even an inference of retaliation because the time between her statements and the actions are too attenuated. *See Trammel v. Simmons First Bank of Searcy*, 345 F.3d 611, 616 (8th Cir. 2003) (two months is too long to support an inference of causation). Thus, Byrd has not established a prima facie case of

retaliation.

Summary judgment is granted on Byrd's retaliation claim against the City of Conway under the Arkansas Civil Rights Act for the same reason discussed above; she has failed to present a prima facie case of discrimination. *See James v. George's, Inc.*, 646 S.W.3d 238, 243 (Ark. Ct. App. 2022) (elements of an ACRA retaliation claim).

C.     FLSA and AMWA Claim

Summary judgment is denied on Byrd's wage and hour claims under the Fair Labor Standards Act and Arkansas Minimum Wage Act because these claims require a weighing of the facts. *See Yasevich v. Heritage Co., Inc.*, No. 3:20-CV-00019 KGB, 2023 WL 5670774, at *16 (E.D. Ark. Sept. 1, 2023) (FLSA and AWMA claims analyzed similarly); *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944) (this answer to this question depends on a number of circumstances). On one side, it is undisputed that when called out, Byrd had twenty to thirty minutes to respond. SUMF ¶ 263. On-call shifts typically lasted from four to twelve hours but could occasionally last 24 hours. *Id.* ¶ 272. Byrd was not required to be at the station while on call and was not required to listen to the police monitor *Id.* ¶¶ 267–68. On the other side, Byrd was essentially confined to her home because she was not able to go to friends' houses, go to town, or go to restaurants when she was on-call. Byrd Br. at 13; *see Watson v. Surf-Frac Wellhead Equip. Co.*, No. 4:11-CV-00843-KGB, 2013 WL 5524122, at *3 (E.D. Ark. Oct. 3, 2013) (where plainitffs were on-call 24 hours a day, seven days a week, deciding whether their time was compensable was a factual issue for the jury).

D.     Arkansas Whistle-Blower Claim

Summary judgment is denied on Byrd's Arkansas Whistle-Blower Act claim. To succeed, Byrd must show that she suffered an adverse employment action because she reported a waste of public funds or suspected violation of law. Ark. Code Ann. § 21-1-603. Adverse action occurs when a public employee is discriminated or retaliated against in any manner that affects her employment. *Id.* § 21-1-602. Byrd has shown that in June 2019 and November 2019 she communicated, in good faith, a waste of public funds when she spoke to Spradlin and Taylor about the K9 funds being used to support Smith's private dog training business. SUMF ¶¶ 48, 63. Byrd claims she suffered adverse employment action when Smith began to treat her differently based on that report. Byrd Br. Supp. at 11; SUMF ¶¶ 61, 63. This is enough to create a factual dispute for the jury to resolve.

## IV. CONCLUSION

For these reasons, defendants' motion for summary judgment is granted on all claims except for the failure to promote sex discrimination, Fair Labor Standards Act, Arkansas Minimum Wage Act, and Arkansas Whistle-Blower Act claims.

IT IS SO ORDERED this 2nd day of July, 2025.

_____
UNITED STATES DISTRICT JUDGE